**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| TED SIGMON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIDGESTONE AMERICAS, INC.; and BRIDGESTONE RETAIL OPERATIONS, LLC d/b/a FIRESTONE COMPLETE AUTO CARE,<br><br>Defendants. | Case No. 2:18-cv-03324-DCN |

**CLASS ACTION COMPLAINT**

COMES NOW, Plaintiff Ted Sigmon, on behalf of himself and all others similarly situated, and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action individually and on behalf of all others similarly situated against Bridgestone Americas, Inc. and Bridgestone Retail Operations, LLC (doing business as Firestone Complete Auto Care) ("Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities").

2. Plaintiff has a mobility disability and is limited in the major life activity of walking, which has caused him to be dependent upon a wheelchair for mobility.

3. Plaintiff has visited Defendants' facilities and was denied full and equal access as a result of Defendants' inaccessible parking lots and paths of travel.

4.      Plaintiff's experiences are not isolated—Defendants have systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendants' facilities.

5.      In fact, numerous facilities owned, controlled, and/or operated by Defendants have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision making Defendants employ with regard to the design, construction, alteration, maintenance, and operation of its facilities causes access barriers and/or allows them to develop and persist at Defendants' facilities.

6.      Unless Defendants are required to remove the access barriers described below, and required to change their policies and practices so that access barriers do not reoccur at Defendants' facilities, Plaintiff and the proposed Class will continue to be denied full and equal access to those facilities as described and will be deterred from fully using Defendants' facilities.

7.      The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . .. Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . ..

42 U.S.C. § 12188(a)(2).

8.      Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

    a. Defendants remediate all parking and path of travel access barriers at Defendants' facilities, consistent with the ADA;

    b. Defendants change their policies and practices so that the parking and path of travel access barriers at Defendants' facilities do not reoccur; and

      c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 8.a. and 8.b. has been implemented and will remain in place.

9. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

10. The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

11. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

12. Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with

disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

13. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

14. Title III and its implementing regulations define discrimination to include the following:

   a. Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

   b. Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

   c. For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

   d. Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

15. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

16. The ADA also provides for specific injunctive relief, which includes the following:

   In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this

4

>subchapter. Where appropriate, injunctive relief shall also include . . . modification of a policy . . . to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## JURISDICTION AND VENUE

17. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

18. Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

19. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

20. Plaintiff is, and at all times relevant hereto was, a resident of South Carolina. As described above, as a result of his disability, Plaintiff relies upon a wheelchair for mobility. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

21. Defendant Bridgestone Americas, Inc. is a Nevada corporation headquartered at 200 4th Avenue S, Suite 101, Nashville, TN 37201-2255.

22. Defendant Bridgestone Retail Operations, LLC is a Delaware limited liability company headquartered at 200 4th Avenue S, Suite 100, Nashville, TN 37201-2255.

23. On information and belief, Defendant Bridgestone Retail Operations, LLC is a direct subsidiary of Defendant Bridgestone Americas, Inc.

24. Defendants are a public accommodation pursuant to 42 U.S.C. §12181(7).

5

**BRIDGESTONE-FIRESTONE ADA CONSENT DECREE**

25.     In 2002, Defendants[1] were party to a class-wide consent decree that, among other things, obligated Defendants to evaluate and remediate parking facilities for non-conforming ADA features. *See American Disability Ass'n, Inc. v. BFS Retail & Commercial Operations, LLC*, No. 01-cv-6529, Dkt. No. 130 (final judgment approving class certification and proposed amended consent decree) (S.D. Fl. Oct. 30, 2002). In that matter, a disability rights organization brought a class action on behalf of a class of persons with mobility or dexterity disabilities who were denied full and equal access to Bridgestone-Firestone retail tire and service stores because of various violations under Title III of the ADA. *See id.* at Dkt. No. 100, pp. 2-3 (order granting preliminary approval of proposed amended consent decree). The consent decree applied to approximately 2,200 Bridgestone-Firestone retail properties throughout the United States owned, leased, operated or managed by BFRC. *Id.* at pp. 16-20.

26.     Under the consent decree, BFRC was obligated, among other things, to survey all of its retail stores to determine what modifications or alterations may be needed for them to comply with the ADA and thereafter to complete any necessary accessibility enhancements in compliance with ADAAG specifications within a set time frame. More specifically, the consent decree provided for the evaluation and remediation of accessible routes and accessible parking, including but not limited to:

    a.  Modification of existing paved areas to modify occasional vertical offsets along an accessible route;

    b.  Modification of existing paved areas where slopes at curb ramps/ramps, accessible parking spaces, and aisles, or exterior entry doors do not conform to ADA requirements;

---

[1] Defendant Bridgestone Retail Operations, LLC was formerly known as BFS Retail & Commercial Operations, LLC ("BFRC") and changed its name to Bridgestone Retail Operations, LLC in 2009.

      c.  Providing conforming accessible parking spaces;

      d.  Modifying the front/back slope of existing curb ramps and ramps which are part of a required accessible route if their slopes do not conform; and

      e.  Modifying the cross slope of existing curb ramps and ramps which are part of a required accessible route if their slopes do not conform.

*Id.* at pp. 79-80. BFRC was additionally required to distribute "ADA Policies regarding the provisions of Title III of the ADA and customer services to all Company Operated BFRC" retail stores. *Id.* at p. 28.

27. The term of the consent decree was approximately seven years from the date of final approval, which would have ended roughly in November 2010. *Id.* at p. 20. During that period, BFRC presumably implemented the remedial measures required under the decree as there were no further filings for enforcement or extensions of the decree following final judgment in the matter. Although the relief achieved by the consent decree was significant and impacted the entirety of BFRC's network of retail stores, an apparent shortcoming was the lack of a provision for a continuing obligation to *maintain* ADA accessibility over time. As further explained below, Defendants' ADA policies and practices permit, *inter alia*, unchecked access barriers to reoccur, resulting in parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility.

**FACTUAL ALLEGATIONS**

**I.    Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities.**

28. Plaintiff has visited Defendants' facilities located at 852 Savannah Hwy Charleston, SC, including within the last year, where he experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and other ADA accessibility violations as set forth in more detail below.

29.     Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities, as he lives nearby and regularly travels to where Defendants' facilities are located, usually to have his car serviced nearby, and he wishes to access goods and services offered at Defendants' facilities but would not feel comfortable returning because of the access barriers he encountered there. Furthermore, Plaintiff intends to return to Defendants' facilities to ascertain whether those facilities remain in violation of the ADA.

30.     As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded.

31.     Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities, however, so long as Defendants' facilities remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendants' facilities.

32.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendants' facilities in violation of his rights under the ADA.

33.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' facilities, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

**II.    Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to Defendants' Facilities.**

34.     Defendants are engaged in the ownership, operation, management, and development of retail auto care properties throughout the United States.

35. Defendants "operate[] the largest network of company-owned automotive service providers in the world — nearly 2,200 tire and vehicle service centers across the United States".[2]

36. As the owner and manager of their properties, Defendants employ centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of their facilities.

37. To date, Defendants' centralized design, construction, alteration, maintenance, and operational policies and practices have systematically and routinely violated the ADA by designing, constructing, and altering facilities so that they are not readily accessible and are usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendants' facilities are maintained.

38. On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendants and found the following violations, which are illustrative of the fact that Defendants implement policies and practices that routinely result in accessibility violations:

    a. 852 Savannah Hwy. Charleston, SC

        i. The surfaces of one or more access aisles had slopes exceeding 2.1%.

    b. 1970 Sam Rittenberg Blvd., Charleston, SC

        i. The surfaces of one or more access aisles had slopes exceeding 2.1%.

    c. 3901 New Bern Ave., Raleigh, NC

        i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

        ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

    d. 3775 William Penn Hwy., Monroeville, PA

---

[2] https://www.bridgestoneamericas.com/en/corporation/subsidiaries-and-business-units/bridgestone-retail-operations (available as of December 10, 2018).

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii. A portion of the route to the store entrance had a cross slope exceeding 2.1%.

e. 10225 Perry Hwy., Wexford, PA

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

f. 3715 Randall Drive, Colorado Springs, CO

      i. A curb ramp projected into an access aisle.

g. 8949 Jennings Station Road, St. Louis, MO

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

h. 10750 Saint Charles Rock Road, Saint Ann, MO

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

i. 10160 Manchester Road, St. Louis, MO

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

39. The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendants' facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, is caused by Defendants' systemic disregard for the rights of individuals with disabilities.

40. Defendants' systemic access violations demonstrate that Defendants either employ policies and practices that fail to design, construct, and alter their facilities so that they are readily accessible and usable and/or that Defendants employ maintenance and operational policies and practices that are unable to maintain accessibility.

41. As evidenced by the widespread inaccessibility of Defendants' parking facilities, absent a change in Defendants' corporate policies and practices, access barriers are likely to reoccur in Defendants' facilities even after they have been remediated.

42. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, inaccessibility to affect Defendants' network of facilities.

## CLASS ALLEGATIONS

43. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All persons with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any Firestone Complete Auto Care store location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendants' failure to comply with the ADA's accessible parking and path of travel requirements.

44. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

45. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

46. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

47. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

48. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

49. The allegations contained in the previous paragraphs are incorporated by reference.

50. Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

51. Defendants' facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs. 42 U.S.C. § 12183(a).

52. Further, the accessible features of Defendants' facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 C.F.R. § 36.211.

53. The architectural barriers described above demonstrate that Defendants' facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs and/or that Defendants' facilities were not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

54. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

55. Defendants' repeated and systemic failures to design, construct, and alter their facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

56. Defendants' facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

57. Defendants are required to provide individuals who use wheelchairs full and equal enjoyment of their facilities.  42 U.S.C. § 12182(a).

58. Defendants have failed, and continue to fail, to provide individuals who use wheelchairs with full and equal enjoyment of their facilities.

59. Defendants have discriminated against Plaintiff and the class in that they have failed to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

60. Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

61.  Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

62.  Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a.  A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to change their policies and practices to prevent the reoccurrence of access barriers post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.  An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.  Payment of costs of suit;

e.  Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.  The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: December 10, 2018                                    Respectfully Submitted,

*s/ James L. Ward, Jr.*
James L. Ward, Jr.
Fed. ID No. 6956
**MCGOWAN HOOD & FELDER, LLC**
321 Wingo Way, Suite 103
Mt. Pleasant, SC 29464
Phone: 843-388-7202
Fax: 843-388-3194
jward@mcgowanhood.com

15

Gregory A. DeLuca
Fed. ID No. 7748
**DeLUCA MAUCHER, L.L.P.**
113 Broughton Road
Moncks Corner, SC 29461
Phone: 843-899-7877
Fax: 843-899-7687
greg@delucamaucher.com

Benjamin J. Sweet*
Kelly K. Iverson*
Elizabeth L. Pollock-Avery*
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: 412-322-9243
Fax: 412-231-0246
bsweet@carlsonlynch.com

*Counsel for Plaintiff and the Class*

*pro hac vice application forthcoming*